ORIGINAL

BERGER KAHN
A Law Corporation
P.O. Box 19694
Irvine, CA 92623-9694

1  TERESA R. PONDER, ESQ., SBN 132270
2  BERGER KAHN, A Law Corporation
   Mail Service:
3    Post Office Box 19694
     Irvine, CA 92623-9694
4  Location:
     2 Park Plaza, Suite 650
5    Irvine, California 92614-8516
6  Tel: (949) 474-1880 • Fax: (949) 474-7265

7  Attorneys for Defendant
   HARTFORD CASUALTY INSURANCE COMPANY

8

FILED

'2007 DEC 28  AM 10: 55

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY____KNK____DEPUTY

9              UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT

11

12  FRELING BAKER and                    CASE NO. **07 CV 2426 WQH BLM**
13  NATALIE JENSEN,
                                         SDSC CASE NO. 37-2007-00082010-
14              Plaintiffs,              CU-BC-CTL

15  vs.                                  **DEFENDANT HARTFORD**
                                         **CASUALTY INSURANCE**
16  HARTFORD CASUALTY                    **COMPANY'S NOTICE OF**
17  INSURANCE COMPANY, and               **REMOVAL OF CIVIL ACTION TO**
    DOES 1-20, Inclusive,                **FEDERAL COURT PURSUANT TO**
18                                       **28 U.S.C. SECTION 1441(B**
                Defendants.
19
                                         COMPLAINT FILED:   11/16/07
20                                       TRIAL DATE:        None Set
21
22
23
24
25
26
27
28

            DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S
            NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

BERGER KAHN
A Law Corporation
P.O. Box 19694
Irvine, CA 92623-9694

1    TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN

2   DISTRICT OF CALIFORNIA:

3    PLEASE TAKE NOTICE that defendant Hartford Casualty Insurance

4   Company ("Hartford"), hereby removes to this court, pursuant to 28 U.S.C. section

5   1441(b), the state court action described below.

6    1.    On November 16, 2007, an action was commenced in the Superior

7   Court of the State of California in the County of San Diego entitled, *Freling Baker*

8   *and Natalie Jensen v. Hartford Casualty Insurance Company and Does 1 through*

9   *20, inclusive*, SDSC Case No. 37-2007-00082010-CU-BC-CTL.  The Summons

10   and Complaint was served upon Hartford on November 30, 2007.  A true and

11   correct copy of the Summons and Complaint is attached as Exhibit "1."

12    2.    This removal is timely pursuant to 28 U.S.C. section 1446(c), as thirty

13   days has not elapsed from the date upon which Hartford was served with the

14   Summons and Complaint.  *See Murphy Bros. v. Michael Pipe Stringing, Inc.*, 526

15   U.S. 344 (1999) (The thirty day removal period does not begin to run until a

16   defendant is formally served with the complaint).

17    3.    This action is a civil action that may be removed to this court by

18   Hartford, pursuant to the provisions of 28 U.S.C. section 1441(b), in that it is a

19   civil action between citizens of different states and the matter in controversy

20   exceeds the sum of $75,000, exclusive of interest and costs.

21    4.    The factual allegations of Plaintiffs' complaint demonstrates that their

22   claim for damages exceeds $75,000.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566-

23   567 (9th Cir. 1992) (Facially apparent from the complaint that the claims likely

24   exceed $75,000); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)

25   (setting forth facts in the notice of removal that support a finding of the requisite

26   amount).

27    Plaintiffs' complaint asserts two causes of action against Hartford:  (1)

28   breach of contract and (2) breach of the implied covenant of good faith and fair

1

BERGER KAHN
A Law Corporation
P.O. Box 19694
Irvine, CA 92623-9694

1    dealing.  Plaintiffs allege that Hartford issued to them a homeowner's insurance

2    policy that was in force and effect in 2005 when a slope failure in their backyard

3    allegedly occurred, causing loss to their home and hillside and to City of San

4    Diego property.  (Complaint, ¶¶ 6, 8, 9.)  Plaintiffs contend that Hartford breached

5    the contract of insurance by failing to pay on the claim. (Complaint, ¶ 11.)

6    Plaintiffs contend that their damages arising from Hartford's alleged breach of

7    contract are in excess of $184,000.  (Complaint, ¶ 9.)  Plaintiffs also contend that

8    the alleged improper investigation and adjustment of their fire claim constituted a

9    breach of the implied covenant of good faith and fair dealing. (Complaint, ¶¶ 15,

10    16, 17.)  Plaintiffs contend that their damages arising from Hartford's alleged

11    breach of the implied covenant of good faith and fair dealing include economic and

12    emotional distress damages.  (Complaint, ¶ 18.)  Thus, it is clear that Plaintiffs'

13    allegations meet the jurisdictional amount in controversy of $75,000.

14          In addition to seeking contract damages and other compensatory and

15    consequential damages, Plaintiffs are also seeking attorney's fees and punitive

16    damages in this action.  (Complaint, ¶ 18, 19 and Prayer ¶ 4, 5.)  "It is well-

17    established that punitive damages are part of the amount in controversy in a civil

18    action [citation]."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).

19    Likewise, attorney's fees are included in the amount in controversy.  *See Goldberg*

20    *v. CPC International, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982).

21          It is facially apparent by the allegations contained in Plaintiffs' complaint

22    and in Plaintiffs' request for damages that Plaintiffs' claims against Hartford

23    exceed $75,000.

24          5.    Hartford is informed and believes that the Plaintiffs were, at the time

25    this action was filed, and still are, residents and citizens of the State of California.

26    Specifically, Plaintiffs are the owners of the real property located at 2715 Inverness

27    Drive, La Jolla, California.  (Complaint, ¶¶ 1, 6.)

28

DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

6.    Hartford Casualty Insurance Company was, at the time this action was filed, and still is, a citizen of the State of Indiana and/or Connecticut. Specifically, Hartford Casualty Insurance Company was incorporated under the laws of the State of Indiana and its principal place of business is located in Hartford, Connecticut. Hartford Casualty Insurance Company is a wholly owned subsidiary of The Hartford Financial Services Group, Inc., a Delaware corporation with its principal place of business in Hartford, Connecticut.

WHEREFORE, Hartford prays that this action be removed from the San Diego Superior Superior Court to the United States District Court for the Southern District of California.

DATED: December 28, 2007        BERGER KAHN, A Law Corporation


By: _Teresa R Ponder_
TERESA R. PONDER, ESQ.
Attorneys for Defendant
HARTFORD CASUALTY
INSURANCE COMPANY


INS/HARTFORD/BAKER & JENSEN/39488/PLDGS/NOTICE OF REMOVAL

BERGER KAHN
A Law Corporation
P.O. Box 19694
Irvine, CA 92623-9694

DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Exhibit 1

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HARTFORD CASUALTY INSURANCE COMPANY, and DOES 1
through 20, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FRELING BAKER and NATALIE JENSEN

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
CIVIL BUSINESS OFFICE 10
CENTRAL DIVISION

2007 NOV 16  P 4: 33

CLER... ...PERIOR COURT
SAN DIEGO COUNTY, CA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
  Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: 37-2007-00082010-CU-BC-CTL *(Número del Caso):* |
|---|---|
| San Diego Superior Court, Central Division<br>330 W. Broadway<br>San Diego, CA 92101 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John P. Stennett, Stennett & Stennett                                     619-544-6887
501 W. Broadway, Suite 1340, San Diego, CA 92101

| DATE: *(Fecha)* NOV 1 6 2007 | Clerk, by *(Secretario)* M. BOTERO | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Hartford Casualty Insurance Company

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

EXHIBIT 1

4

1   JOHN P. STENNETT, SBN: 72815
    STENNETT & STENNETT
2   Attorneys at Law
    501 West Broadway, Suite 1340
3   San Diego, CA 92101
    (619) 544-6887
4

5   Attorneys for Plaintiffs

6

7

8

9

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

11   FRELING BAKER  and       )
    NATALIE JENSEN,         )
12                       )
              Plaintiffs,   )
13                       )
      v.                  )
14                       )
    HARTFORD CASUALTY     )
15   INSURANCE COMPANY, and  )
    DOES 1 through 20, Inclusive,  )
16                       )
                      )
17           Defendants.   )
18

Case No. 37-2007-00082010-CU-BC-CTL

COMPLAINT FOR BREACH OF
CONTRACT; BAD FAITH BREACH
INSURANCE CONTRACT (i.e.,
TORTIOUS BREACH OF THE
IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING);
NEGLIGENCE; FRAUD

19      COMES NOW plaintiffs and allege against the defendants, and each of them, as follows:

20                    **FIRST CAUSE OF ACTION**
                **FOR BREACH OF CONTRACT**
21          **(AGAINST THE INSURER DEFENDANTS**

22      1.    At all times herein mentioned plaintiffs FRELING BAKER and NATALIE

23   JENSEN are and were individuals residing in the City of La Jolla, State of California.

24      2.   Plaintiffs are informed and believe and on such basis allege that defendants,

25   HARTFORD CASUALTY INSURANCE COMPANY (HARTFORD) and DOES 1 through 10,

26   referred to herein as the insurer defendants, are insurance companies authorized to do business

27   and doing business in the State of California.

28

**EXHIBIT** 1

5

37-2007-00082010-CU-BC-CTL

1    3.  At all times herein mentioned, the conduct of defendants and each of them was carried

2    out through the acts and omissions of their officers, agents and employees, and each of them, and

3    the conduct of said officers, agents and employees was authorized and ratified by the insurer

4    defendants.

5    4.  The true names and capacities, whether individual,  corporate, associate or otherwise

6    of defendants DOES 1 through 20,  inclusive, are unknown to plaintiffs who therefore sue said

7    defendants by such fictitious names, and plaintiffs will amend  this complaint to show their true

8    names and capacities when the  same have been ascertained.  Plaintiffs are informed and believe,

9    and thereon allege that each of the defendants designated herein  as a DOE is responsible in some

10   manner for the events and happenings herein alleged and proximately thereby caused injuries and

11   damages to plaintiffs as herein alleged.

12   5.  At all material times herein mentioned, each of the individual and fictitious defendants

13   was the agent, servant and employee of each of the remaining defendants, authorized to bind said

14   defendants and was acting within the course and scope of said agency and employment and whose

15   acts and conduct alleged herein were authorized and ratified by said defendants.

16   6.  Insurer defendants issued a homeowners insurance policy to plaintiffs FRELING

17   BAKER and  NATALIE JENSEN that was in full force and effect at the time of loss referenced

18   herein.  Said policy, policy number 72RB230563CC, attached and incorporated herein as Exhibit

19   1, insured plaintiffs' home located at 2715 Iverness Drive, La Jolla, CA 92037.

20   7.  At all times herein mentioned, plaintiffs FRELING BAKER and NATALIE JENSEN

21   had reasonably reposed trust and confidence in the fidelity and integrity of the insurer defendants,

22   DOES 11 through 15, and each of them, in that as their insurance company, plaintiffs believed

23   that defendants and each of them would always act in the best interest of plaintiffs and would

24   never do anything that would defraud, harm, or deceive plaintiffs.  Plaintiffs allege that the nature

25   of plaintiffs' relationship with defendants, and each of them, was that defendants, and each of

26   them, stood in a quasi-fiduciary relationship to plaintiffs at all times herein mentioned.

27   8.  On or about May 10, 2005, plaintiffs FRELING BAKER and  NATALIE JENSEN

28   incurred loss to their home covered by said policy of insurance.  The loss was caused by the

2

**EXHIBIT** __1__

6

1  malicious mischief of an unknown person(s) who turned on a water spigot in plaintiffs' back yard

2  while they were on vacation. This resulted in the sloughing off of the slope to the rear of

3  plaintiffs' property onto property of the City of San Diego and endangering traffic on Torry Pines

4  Road, a city street.

5       9.    The above circumstances made plaintiffs strictly liable to the City of San Diego to

6  remove the debris from City property, to shore up the slope to avoid further dangers to City

7  property and to re-vegetate the hillside under San Diego Municipal Code 54.0202, 54.0205,

8  54.0207, 54.0209. In complying with the demands of the City of San Diego to repair the hillside,

9  plaintiffs incurred expenses in excess of $184,000.00.

10       10.    Plaintiffs at all times made timely claims for benefits under the policy that provided

11  coverage for claims made against the insured for damages because of bodily injury or property

12  damage. Plaintiffs at all times performed all conditions required under said policy of insurance to

13  receive benefits thereunder.

14       11.    Defendant insurers, DOES 11 through 15, and each of them, breached their

15  contractual obligations under said policy of insurance by asserting in their letters of October 3,

16  2007 and October 26, 2007 that the plaintiffs were not "negligent" and thus their claim for

17  indemnity was not covered under the policy.

18       12.    As a result of said defendants', and each of their, breach of contract, plaintiffs have

19  suffered loss of insurance benefits and consequential and incidental expenses, all to their damage

20  in a sum to be proven at time of trial.

21

22                 **SECOND CAUSE OF ACTION**

23      **FOR BAD FAITH BREACH OF INSURANCE CONTRACT**
    **(i.e., TORTIOUS BREACH OF THE IMPLIED COVENANT**

24          **OF GOOD FAITH AND FAIR DEALING)**
       **AGAINST THE INSURER DEFENDANTS**

25       13.    Plaintiffs reallege each and every paragraph of the First Cause of Action as though

26  fully set forth herein.

27       14.    After discovering the loss, plaintiffs promptly made a claim under their policy with

28  defendant insurers. HARTFORD'S adjuster Don Bailey inspected plaintiffs' property and

1   photographed the damages. Thereafter, Mr. Bailey was advised of the progress of the repairs and

2   was invited to observe that progress personally. Mr. Bailey declined and no one from

3   HARTFORD ever revisited plaintiffs' property after the initial inspection. By letter dated August

4   3, 2005, HARTFORD acknowledged coverage for the loss to the extent that it caused damage to

5   landscaping, but asserted that the damage to the land was excluded under the terms of the policy.

6   Though plaintiffs worked with Mr. Bailey over the next year they were unable to obtain a

7   payment under their policy.

8        15.    HARTFORD, after numerous delays and excuses eventually agreed to pay in

9   March 2007 under the property loss coverages for loss of landscape, a koi pond and some debris

10  removal in the sum of $22,524.23. However, it continued to "investigate" plaintiffs' claims for

11  coverage under the liability provisions of the policy. Finally, by letter dated June 1, 2007

12  HARTFORD denied plaintiffs' claim for coverage under their liability coverage, asserting that

13  there was no damage to the City of San Diego's property and that the claims all related to

14  repairing damage to plaintiffs' property. This conclusion was completely contrary to all the

15  documentation submitted in the claim. HARTFORD came to this erroneous conclusion despite

16  the fact that it had previously been provided with the following.

17           (1)    A letter from Mohammad Sammak, Street Superintendent General Services

18                  Department for the City of San Diego, in which he confirmed that a portion

19                  of plaintiffs' slope failed and "slide down into the city's public right of

20                  way."

21           (2)    Two aerial photographs which depicted plaintiffs' home and the city's right

22                  of way.

23           (3)    Photographs taken from the ground depicting the slope failure which

24                  clearly showed the debris deposited on city property.

25           (4)    An estimate from Vailston Company, Inc which indicated that 350 cubic

26                  yards of slide material had to be removed from the city property.

27  When these facts were again pointed out to HARTFORD, HARTFORD failed to acknowledge

28  that there was damage to city property.   Rather it changed tactics and claimed that there was

**EXHIBIT** 4 1

8

1  now no coverage because there was no evidence of any negligence on the part of plaintiffs

2  causing the loss. Plaintiffs then pointed out to HARTFORD that it was strictly liable under the

3  City Municipal Codes for the damage to city property and that the policy did not require a

4  showing of negligence, but rather a showing of legal liability. Despite all these facts,

5  HARTFORD continued to deny any coverage under the liability provisions of the policy.

6      16.    The insurer defendants and DOES 11 through 15, and each of them, had an

7  absolute duty to deal fairly and in utmost good faith with their insureds. Said defendants breached

8  their duty of good faith and fair dealing owed to plaintiff by, among other things, refusing to

9  indemnify plaintiffs for the loss to their home. Plaintiffs are also informed and believe and

10  thereupon allege that said defendants breached the implied covenant of good faith and fair dealing

11  by failing to comply with California law governing the handling of insurance claims, including but

12  not limited to the following:

(1)    Failing and refusing to construe all uncertainties and ambiguities in
       the policy in favor of its insureds.

(2)    Failing and refusing to consider the interests of its insured with the
       same care and consideration as it devoted to its own interests.

(3)    Defendants refused and continue to refuse to give any reasonable
       interpretation to the provisions in the policy of insurance or any
       reasonable application of such provisions to plaintiffs' claims and
       has acted to protect its own financial interests therein at the
       expense of plaintiffs' rights.

(4)    Defendants' refusal to pay benefits due compelled plaintiffs to
       engage legal counsel and to initiate litigation to recover such
       benefits.

(5)    Failing to acknowledge and act reasonably promptly upon
       communications with respect to claims arising out of the insurance
       policy.

(6)    Failing to adopt and implement reasonable standards for the prompt

5

EXHIBIT 1
9

1    investigation and processing of claims arising under the insurance

2    policy.

3    (7)    Failing to investigate all facts that would provide a basis for

4    coverage under the policy.

5    (8)    Failing to point out the basis under the terms of the policy for insurer defendants'

6    denial of plaintiffs' claim.

7    17.    Plaintiffs are informed and believe and thereupon allege that the insurer defendants

8    have unreasonably withheld the above-referenced benefits justly due to plaintiffs and will continue

9    to so withhold said benefits unless and until a court of law in the state of California orders insurer

10    defendants to pay plaintiffs said benefits.

11    18.    As a direct and proximate result of the aforesaid acts and omissions of said

12    defendants, and each of them, plaintiffs sustained and continue to sustain loss of insurance

13    benefits, incurred and continues to incur attorneys' fees, and suffered and continues to suffer

14    worry and mental and emotional distress, all to plaintiffs' detriment and damage in amounts not

15    fully ascertained, but within the jurisdiction of this Court. When such sums have been ascertained

16    plaintiffs will amend this complaint accordingly or will prove same at time of trial.

17    19.    At all material times, the insurer defendants, in doing the things alleged herein, acted

18    and continue to act maliciously (i.e., despicably, and with a conscious and willful disregard of

19    plaintiffs' rights) oppressively and/or fraudulently so as to justify the assessment of punitive and

20    exemplary damages against said defendants, and each of them, in a sum to punish said defendants

21    for doing said acts and/or omissions and a sum which will deter said defendants and others

22    similarly situated from engaging in said conduct in the future -- such sum to be proved at trial.

23    WHEREFORE, PLAINTIFFS pray judgment as follows:

24    1.    For unpaid contractual benefits as described in this Complaint;

25    2.    For compensatory/general damages according to proof;

26    3.    For incidental and consequential damages according to proof;

27    4.    For punitive and exemplary damages according to proof;

28

6

**EXHIBIT** 1

10

5.   For attorneys' fees as provided by law;

6.   For costs of suit incurred herein; and,

7.   For such other and further relief as the Court may deem proper, including interest (prejudgment and otherwise) on sums due.

STENNETT & STENNETT
Attorneys for Plaintiffs

By _____
JOHN P. STENNETT

7

**EXHIBIT** ___1___
                  11



**EXHIBIT** 1
—————
12

**ADDITIONAL COVERAGES**
Claim Expenses
First Aid Expenses
Damage to Property of Others .................... 23
Loss Assessment

**CONDITIONS** .................................... 24
Limit of Liability
Duties After Loss

SECTION I   **CONDITIONS**
AND          Policy Period
SECTION II   Cancellation          Non-Renewal .......... 25

Please Note: State Amendatory Endorsements may be attached.

## HOMEOWNERS (91 EDITION) ADVANTAGE 5 POLICY

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **Bodily injury** means bodily harm, sickness or disease, including required care, loss of services and death that results.
2. **Business** includes trade, profession or occupation.
3. **Insured** means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, insured also means:
   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any business or without consent of the owner is not an insured;
   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an insured location with your consent.
4. **Insured location** means:
   a. The residence premises;
   b. The part of other premises, other structures and grounds used by you as a residence and:
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;
   c. Any premises used by you in connection with the premises in 4.a. or 4.b. above;
   d. Any part of a premises:
      (1) Not owned by an insured; and
      (2) Where an insured is temporarily residing;
   e. Vacant land, other than farm land, owned by or rented to an insured;
   f. Land owned by or rented to an insured on which a one or two family dwelling is being built as a residence for an insured;
   g. Individual or family cemetery plots or burial vaults of an insured; or

EXHIBIT  1

13

h. Any part of a premises occasionally rented to an insured for other than business use.

5. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. Bodily injury; or
   b. Property damage.

6. **Property damage** means physical injury to, destruction of, or loss of use of tangible property.

7. **Residence employee** means:
   a. An employee of an insured whose duties are related to the maintenance or use of the residence premises, including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the business of an insured.

8. **Residence premises** means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;
   where you reside and which is shown as the residence premises in the Declarations.
   Residence premises also means a two family dwelling where you reside in at least one of the family units and which is shown as the residence premises in the Declarations.

## SECTION I — PROPERTY COVERAGES

### COVERAGE A — DWELLING

We cover:
1. The dwelling on the residence premises shown in the Declarations, including structures attached to the dwelling; and
2. Materials and supplies located on or next to the residence premises used to construct, alter, or repair the dwelling or other structures on the residence premises.

Except as specifically provided in ADDITIONAL COVERAGES, for Land, this coverage does not apply to land, including land on which the dwelling is located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

### COVERAGE B — OTHER STRUCTURES

We cover other structures on the residence premises set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:
1. Used in whole or in part for business; or
2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

Form H-5A (Ed. 10/83) NS          Page 2 of 29

### COVERAGE C — PERSONAL PROPERTY

We cover personal property owned or used by an insured while it is anywhere in the world. At your request, we will cover personal property owned by:
1. Others while the property is on the part of the residence premises occupied by an insured;
2. A guest or a residence employee, while the property is in any residence occupied by an insured.

Our limit of liability for personal property usually located at an insured's residence, other than the residence premises, is 10% of the limit of liability for Coverage C or $1,000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability** — These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1,000 on securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.
   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1,000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1,000 on trailers not used with watercraft.
5. $2,500 for loss by theft of jewelry, watches, furs, precious and semi-precious stones, subject to a limit of $1,000 on any one item.
6. $2,500 for loss by theft of firearms, subject to a limit of $2,000 on any one item.
7. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2,500 on property, on the residence premises, used at any time or in any manner for any business purpose.
9. $250 on property, away from the residence premises, used at any time or in any manner for any business purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus;

Form H-5A (Ed. 10/83) NS          Page 3 of 29

**EXHIBIT** ____1____

14

11. $1,000 to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
  a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
  b. Is away from the residence premises; and
  c. Is used at any time or in any manner for any business purpose.
  Electronic apparatus includes:
  a. Accessories or antennas; or
  b. Tapes, wires, records, discs or other media;
  for use with any electronic apparatus.
12. $10,000 on electronic data processing equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the residence premises except when the equipment or media are removed from the residence premises for the purpose of repair, servicing or temporary use or located at another insured location.
13. $15,000 for loss by theft of rugs, carpets (excluding wall to wall), tapestries, wall-hangings or other similar articles whose principal value is derived from its color, design, quality of material and weaving, condition and age, subject to a limit of $7,500 on any one article.

Property Not Covered. We do not cover:
1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances. This includes:
  a. Their equipment and accessories; or
  b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:
    (1) Accessories or antennas; or
    (2) Tapes, wires, records, discs or other media for use with any electronic apparatus.
  The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.
  We do cover vehicles or conveyances not subject to motor vehicle registration which are:
  a. Used to service an insured's residence; or
  b. Designed for assisting the handicapped.
4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;
5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an insured;
6. Property in an apartment regularly rented or held for rental to others by an insured, except as provided in Additional Coverages 10.;
7. Property rented or held for rental to others off the residence premises.
8. Business data, including such data stored in:
  a. Books of account, drawings or other paper records; or

  b. Electronic data processing tapes, wires, records, discs or other software media;
  However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market subject to and as specifically provided for in Additional Coverages 12.
9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

COVERAGE D — LOSS OF USE
The limit of liability for Coverage D is the total limit for all the coverages that follow.
1. If a loss covered under this Section makes that part of the residence premises where you reside not fit to live in, we cover your:
  Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
  Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.
2. If a loss covered under this Section makes that part of the residence premises rented to others or held for rental by you not fit to live-in, we cover the:
  Fair Rental Value, meaning the fair rental value of that part of the residence premises rented to others or held for rental by you, less any expenses that do not continue while the premises is not fit to live in.
  Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.
3. If a civil authority prohibits you from use of the residence premises as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.
The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.
We do not cover loss or expense due to cancellation of a lease or agreement.

ADDITIONAL COVERAGES
1. Debris Removal. We will pay your reasonable expense for the removal of:
  a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or
  b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.
  This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.
  We will also pay your reasonable expense, up to $500, for the removal of fallen trees from the residence premises of:
  a. Your tree(s) felled by the peril of Windstorm or Hail;
  b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or
  c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C; provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

EXHIBIT 1
15

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.
This coverage:
   a. Does not increase the limit of liability that applies to the covered property;
   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in Section I — CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the residence premises, for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the residence premises, Vandalism or malicious mischief, or Theft.
We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for business purposes.
This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charge if the property is located within the limits of the city, municipality or protection district furnishing the fire department response. This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.** We will pay up to $1,000 for:
   a. The legal obligation of an insured to pay because of the theft or unauthorized use of credit cards issued to or registered in an insured's name.
   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an insured's name.
   c. Loss to an insured caused by forgery or alteration of any check or negotiable instrument; and
   d. Loss to an insured through acceptance in good faith of counterfeit United States or Canadian paper currency.
We do not cover use of a credit or fund transfer card:
   a. By a resident of your household;
   b. By a person who has been entrusted with either type of card; or
   c. If an insured has not complied with all terms and conditions under which the card is issued.
All loss resulting from a series of acts committed by any one person or in

which any one person is concerned or implicated is considered to be one loss. We do not cover loss arising out of business use or dishonesty of an insured. This coverage is additional insurance. No deductible applies to this coverage.
Defense:
   a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.
   b. If a suit is brought against an insured for liability under the Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.
   c. We have the option to defend at our expense an insured or an insured's bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, caused by all members collectively, caused by a Peril Insured Against under **COVERAGE A — DWELLING**, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.
This coverage applies only to loss assessments charged against you as owner or tenant of the residence premises.
We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.
The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.
Condition I. Policy Period, under **SECTIONS I AND II CONDITIONS**, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
   a. Perils Insured Against in **COVERAGE C — PERSONAL PROPERTY.** These perils apply to covered buildings and personal property for loss insured by this additional coverage;
   b. Hidden decay;
   c. Hidden insect or vermin damage;
   d. Weight of contents, equipment, animals or people;
   e. Weight of rain which collects on a roof; or
   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the construction, remodeling or renovation.
Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.
Collapse does not include settling, cracking, shrinking, bulging or expansion.
This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.** We cover:
   a. The breakage of glass or safety glazing material which is part of a covered

**EXHIBIT** ___1___
                16

building, storm door or storm window; and
b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the residence premises if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in an apartment on the residence premises regularly rented or held for rental to others by an insured, for loss caused only by the following Perils Insured Against:
   a. **Fire or lightning.**
   b. **Windstorm or hail.**
      This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening. This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.
   c. **Explosion.**
   d. **Riot or civil commotion.**
   e. **Aircraft,** including self-propelled missiles and spacecraft.
   f. **Vehicles.**
   g. **Smoke,** meaning sudden and accidental damage from smoke.
      This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
   h. **Vandalism or malicious mischief.**
   i. **Falling objects.**
      This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.
   j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
   k. **Accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
      This peril does not include loss:
      (1) To the system or appliance from which the water or steam escaped;
      (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or
      (3) On the residence premises caused by accidental discharge or overflow which occurs off the residence premises.
      In this peril, a plumbing system does not include a sump, sump pump or related equipment.
   l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire

protective sprinkler system, or an appliance for heating water.
   m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
      This peril does not include loss on the residence premises while the dwelling is unoccupied, unless you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain the system and appliances of water.
   n. **Sudden and accidental damage from artificially generated electrical current.**
      This peril does not include loss to a tube, transistor or similar electronic component.
   o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

   The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

11. **Arson Reward.** We will pay up to $1,000 for information which leads to an arrest and conviction in connection with a fire loss to property covered by this policy. This coverage is additional insurance and no deductible applies to this coverage. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

12. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change in temperature which results from power interruption that takes place on the residence premises. The power interruption must be caused by an insured Peril occurring on the residence premises. Power lines located off the residence premises must remain energized.
   This coverage does not increase the limit of liability or change the deductible that applies to the damaged property.

13. **Refrigerated Products.** We will pay up to $1,000 under Coverage C — Personal Property for loss to the contents of freezer or refrigerated units at the residence premises caused by change of temperature resulting from:
   1. Interruption of electrical service to the refrigeration system caused by a breakdown of the generating or transmission system; or
   2. Mechanical or electrical breakdown of the refrigeration system.
   Interruption of electrical service, mechanical or electrical breakdown does not include:
      a. Removal of a plug from an electrical outlet; or
      b. Turning off an electrical switch unless caused by an insured peril.
   This coverage does not increase the limit of liability or change the deductible that applies to the Coverage C — Personal Property.

14. **Land.** If an event results in an insured Loss to the insured dwelling, other than the breakage of glass or safety glazing, and a loss of land stability, we will pay up to $10,000 for repair costs associated with the land. This includes the costs required to replace, stabilize or otherwise restore the land. This coverage applies only to the land necessary to support that part of the insured dwelling sustaining the insured Loss.
   This coverage is additional insurance.

15. **Lock Replacement.** We will pay up to $500 to replace locks or cylinders due

Form H-5A (Ed. 10/93) NS                Page 8 of 29

Form H-5A (Ed. 10/93) NS                Page 9 of 29

**EXHIBIT** ___1___

17

to covered theft of property in, or keys to the Residence Premises. This coverage is additional insurance.

No deductible applies.

The following conditions apply:

a. We are notified of the theft.

b. The police are notified of the theft.

c. Locks or cylinders are replaced within 72 hours of the theft.

d. Coverage applies if Personal Property is lost by covered theft from the Residence Premises even if the keys are not discovered to be missing or copied.

e. Coverage applies for suspicious disappearance of keys only if other property is stolen or missing.

f. Keys entrusted to a custodian are not considered stolen.

g. We do not cover locks or cylinders for any motor vehicle, motorized land vehicle, or any other building, structure, room or vault which is not part of the Residence Premises.

16. **Water Back Up and Sump Pump Overflow.** We will provide up to $5,000, for direct physical loss, not caused by the negligence of any Insured, to property covered under Section I caused by:

(i) Water which backs up through sewers or drains; or

(ii) Water which overflows from a sump even if such overflow results from the mechanical breakdown of the sump.

This coverage does not increase the limits of liability for Coverages A, B, C, or D stated in the policy Declarations.

The following conditions apply:

a. **Special Deductible.** The following deductible provision replaces any other deductible provision in the policy with respect to loss covered under this Additional Coverage.

We will pay only that part of the loss which exceeds $500. No other deductible applies to this additional coverage. This deductible does not apply with respect to Coverage D — Loss of Use.

b. **Perils Insured Against.** Paragraph 2.e. (2) under Coverage A — Dwelling and Coverage B — Other Structures is deleted, with respect to coverage for loss caused by overflow of sumps, and replaced by the following:

(2) Inherent vice, latent defect; .

## SECTION I — PERILS INSURED AGAINST

**COVERAGE A — DWELLING and COVERAGE B — OTHER STRUCTURES**

We insure against risks of direct physical loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead;

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is occupied.

d. Vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an Insured.

If any of these cause water damage not otherwise excluded, by escape of water from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under SECTION I — EXCLUSIONS.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**COVERAGE C — PERSONAL PROPERTY**

We insure against direct physical loss to property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I — EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow,

**EXHIBIT** 1
18

sleet, sand or dust enters through this opening.
This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**
4. **Riot or civil commotion.**
5. **Aircraft, including self-propelled missiles and spacecraft.**
6. **Vehicles.**
7. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or malicious mischief.**
9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
   This peril does not include loss caused by theft:
   a. Committed by an insured;
   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or
   c. from that part of a residence premises rented by an insured to other than an insured.
   This peril does not include loss caused by theft that occurs off the residence premises of:
   a. Property while at any other residence owned, rented to, or occupied by an insured, except while an insured is temporarily living there. Property of a student who is an insured is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;
   b. Watercraft, including their furnishings, equipment and outboard engines or motors; or
   c. Trailers and campers.
10. **Falling Objects**
    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.
11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
    This peril does not include loss:
    a. To the system or appliance from which the water or steam escaped;
    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or
    c. On the residence premises caused by accidental discharge or overflow which occurs off the residence premises.
13. **Sudden and accidental tearing apart, cracking, burning or bulging of a** steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
    We do not cover loss caused by or resulting from freezing under this peril.
14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective

sprinkler system or of a household appliance.
This peril does not include loss on the residence premises while the dwelling is unoccupied, unless you have used reasonable care to:
   a. Maintain heat in the building; or
   b. Shut off the water supply and drain the system and appliances of water.
15. **Sudden and accidental damage from artificially generated electrical current.**
    This peril does not include loss to a tube, transistor or similar electronic component.
16. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I — EXCLUSIONS

1. We do not insure against loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss:
   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.
   b. **Earth Movement,** including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
      (1) Fire;
      (2) Explosion; or
      (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;
      ensues and then we will pay only for the ensuing loss.
      This exclusion does not apply to loss by theft.
   c. **Water Damage,** meaning:
      (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
      (2) Water which backs up through sewers or drains or which overflows from a sump except as provided under Additional Coverage 16; or
      (3) Water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
      Direct loss by fire, explosion or theft resulting from water damage is covered.
   d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the residence premises. But, if a Peril Insured Against ensues on the residence premises, we will pay only for that ensuing loss.
   e. **Neglect,** meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss.
   f. **War,** including the following and any consequence of any of the following:
      (1) Undeclared war, civil war, insurrection, rebellion or revolution;
      (2) Warlike act by a military force or military personnel; or,
      (3) Destruction, seizure or use for a military purpose.

Form H-5A (Ed. 10/83) NS            Page 12 of 29

Form H-5A (Ed. 10/83) NS            Page 13 of 29

**EXHIBIT** 1

19

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of **SECTION I — CONDITIONS.**

h. **Intentional Loss,** meaning any loss arising out of any act committed:
    (1) By or at the direction of an insured; and
    (2) With the intent to cause a loss.

2. We do not insure against loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**
    (1) Planning, zoning, development, surveying, siting;
    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    (3) Materials used in repair, construction, renovation or remodeling; or
    (4) Maintenance;
of part or all of any property whether on or off the **residence premises.**

## SECTION I — CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:
    a. To the insured for more than the amount of the **insured's** interest at the time of loss, or
    b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:
    a. Give prompt notice to us or our agent;
    b. Notify the police in case of loss by theft;
    c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;
    d. Protect the property from further damage. If repairs to the property are required, you must:
        (1) Make reasonable and necessary repairs to protect the property; and
        (2) Keep an accurate record of repair expenses;
    e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
    f. As often as we reasonably require:
        (1) Show the damaged property;
        (2) Provide us with records and documents we request and permit us to make copies, and
        (3) Submit to examination under oath, while not in the presence of any other insured, and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
    (1) The time and cause of loss;
    (2) The interest of the insured and all others in the property involved and all liens on the property;
    (3) Other insurance which may cover the loss;
    (4) Changes in title or occupancy of the property during the term of this policy;
    (5) Specifications of damaged buildings and detailed repair estimates;
    (6) The inventory of damaged personal property described in 2.e. above;
    (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and
    (8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** We will pay no more than the limits of liability of this policy which apply to the damaged or destroyed property. Covered property losses are settled as follows:

a. We will pay the full cost of repair or replacement of the following property, except as listed in Condition 3.b.:
    (1) Personal property;
    (2) Awnings, carpeting, household appliances, outdoor antennas, and outdoor equipment, whether or not attached to buildings; and
    (3) Structures that are not buildings.
    (4) Condition 3.a. is subject to the following:
        a. In case of loss we will pay no more than the least of:
            (i) The limits of liability of this policy applying to the damaged or destroyed property;
            (ii) The replacement cost of the damaged or destroyed property, or any part;
            (iii) The amount necessary to repair or replace the damaged or destroyed property.
        b. When the replacement cost for the entire loss to Personal Property covered under this section exceeds $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is completed.
        c. You may first make a claim under the policy for loss or damage on an actual cash value basis. You may then within 180 days after the loss, make claim for any added liability on a replacement cost basis.
        d. This coverage also applies to items or classes of property scheduled in this policy except as outlined in Conditions 3.b.(2) and 3.b.(3).

b. We will pay actual cash value at the time of loss but not more than the amount required to repair or replace for:
    (1) Fences;
    (2) Paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art or rarity which by their inherent nature cannot be replaced;

**EXHIBIT** 1
20

(3) Articles whose age or past value much to their value, such as souvenirs and collectors items;

(4) Property which has not been kept in good condition.

However, we will pay no more than the limits of liability of this policy which apply to the damaged or destroyed property.

c. We will pay replacement cost without deduction for depreciation for buildings under Coverage A or B, subject to the following:

(1) We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged, for like construction and use, on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) We will settle covered losses to:

(a) The dwelling under Coverage A after adjusting the limit of liability shown in the Declarations as described in Condition 3.c.(2)(b), provided you:

(i) Insure the dwelling to 100% of its replacement cost as determined by us;

(ii) Allow us to adjust the Coverage A limit of liability and the premium annually in accordance with the property evaluations we make, and any increases in inflation;

(iii) Notify us, within 30 days of completion, of any alterations to the dwelling which increase the replacement cost of the dwelling by 5% or more; and

(iv) Replace or fully repair the damaged building.

(b) If you comply with the provisions of Condition 3.c.(2)(a), we will:

(i) Increase the Coverage A limit of liability to equal the current replacement cost of the dwelling if the amount of the loss to the dwelling is more than the limit of liability indicated on the Declarations Page. However, in no event will such increased limit exceed the lesser of:

1) Two times the Coverage A amount shown in the Declarations; or

2) The Coverage A amount shown in the Declarations plus $250,000.

(ii) Also increase by the same percentage applied to Coverage A the limit of liability for Coverages B, C and D. However, we will do this only if Coverage A limit of liability is increased under paragraph 2.b.i. above as a result of a Coverage A loss;

(iii) Adjust the policy premium from the time of loss for the remainder of the policy term based on the increased limits of liability.

(3) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss and you have failed to comply with the provisions of Condition 3.c.(2)a above, we will pay the greater

of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(4) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(5) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of c.(1), c.(2) and c.(3) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2,500;

we will settle the loss according to the provisions of c.(1), c.(2) and c.(3) above whether or not actual repair or replacement is complete.

(6) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. Loss to a Pair or Set. In case of loss to a pair or set, we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between actual cash value of the property before and after the loss.

5. Glass Replacement. Loss for damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount

EXHIBIT __1__

21

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. Reach agreement with you; or

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an insured.

12. **Mortgage Clause.** The word "mortgagee" includes trustee.

If a mortgage is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date of cancellation or nonrenewal takes effect. If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

a. **Nuclear Hazard** means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you, or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II — LIABILITY COVERAGES

**COVERAGE E — PERSONAL LIABILITY**

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgment interest awarded against the insured; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit as we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

**COVERAGE F — MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except residence employees. As to others, this coverage applies only:

1. To a person on the insured location with the permission of an insured; or

2. To a person off the insured location, if the bodily injury:

a. Arises out of a condition on the insured location or the ways immediately adjoining;

b. Is caused by the activities of an insured;

c. Is caused by a residence employee in the course of the residence employee's employment by an insured; or

d. Is caused by an animal owned by or in the care of an insured.

EXHIBIT __1__

22

## SECTION II — EXCLUSIONS

1. **Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to bodily injury or property damage:

   a. Which is expected or intended by the insured.

   b. Arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business. This exclusion does not apply to newspaper delivery, babysitting, caddying, lawn care or any similar business engaged in by an insured who is a full-time student under 19 years of age;

   c. Arising out of the rental or holding for rental of any premises by an insured. This exclusion does not apply to the rental or holding for rental of an insured location:

   (1) On an occasional basis if used only as a residence;

   (2) In part, for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders;

   (3) In part, as an office, school, studio or private garage; or

   (4) If farm land (without buildings) not in excess of 500 acres, rented or held for rental to others;

   d. Arising out of the rendering of or failure to render professional services;

   e. Arising out of any premises:

   (1) Owned by an insured;

   (2) Rented to an insured; or

   (3) Rented to others by an insured;

   that is not an insured location;

   f. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured;

   (2) The entrustment by an insured of a motor vehicle or any other motorized land conveyance to any person; or

   (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

   (1) A trailer not towed by or carried on a motorized land conveyance;

   (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

   (a) Not owned by an insured; or

   (b) Owned by any insured and on an insured location.

   (3) A motorized golf cart when used to play golf on a golf course;

   (4) A vehicle or conveyance not subject to motor vehicle registration which is:

   (a) Used to service an insured's residence;

   (b) Designed for assisting the handicapped; or

   (c) In dead storage on an insured location.

   g. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of a watercraft described below;

   (2) The entrustment by an insured of a watercraft described below to any person; or

   (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

   Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an insured.

   This exclusion does not apply to watercraft:

   (1) That are not sailing vessels are powered by:

   (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an insured;

   (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an insured;

   (c) One or more outboard engines or motors with 25 total horsepower or less;

   (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an insured;

   (e) Outboard engines or motors of more than 25 horsepower owned by an insured if:

   (i) You acquire them prior to the policy period; and

   a) You declare them at policy inception; or

   b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

   (ii) You acquire them during the policy period. This coverage applies for the policy period.

   (2) That are sailing vessels, with or without auxiliary power:

   (a) Less than 26 feet in overall length;

   (b) 26 feet or more in overall length, not owned by or rented to an insured.

   h. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of an aircraft;

   (2) The entrustment by an insured of an aircraft to any person; or

   (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

   An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

   i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

   (1) Undeclared war, civil war, insurrection, rebellion or revolution;

   (2) Warlike act by a military force or military personnel; or

   (3) Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

EXHIBIT 1
23

j. Which arises out of the transmission of a communicable disease by an insured;

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g. and h. do not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured.

2. **Coverage E — Personal Liability**, does not apply to:

a. Liability:

  (1) For any loss assessment charged against you as a member of an association, corporation, or community of property owners;

  (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) That directly relate to the ownership, maintenance or use of an insured location; or

    (b) Where the liability of others is assumed by the insured prior to an occurrence;

  unless excluded in (1) above or elsewhere in this policy;

b. Property damage to property owned by the insured;

c. Property damage to property rented to, occupied or used by or in the care of the insured.

  This exclusion does not apply to property damage caused by fire, smoke or explosion;

d. Bodily injury to any person eligible to receive any benefits:

  (1) Voluntarily provided; or

  (2) Required to be provided;

  by the insured under any:

  (1) Workers' compensation law;

  (2) Non-occupational disability law; or

  (3) Occupational disease law;

e. Bodily injury or property damage for which an insured under this policy:

  (1) Is also an insured under a nuclear energy liability policy; or

  (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

  A nuclear energy liability policy is one issued by:

  (1) American Nuclear Insurers;

  (2) Mutual Atomic Energy Liability Underwriters;

  (3) Nuclear Insurance Association of Canada;

  or any of their successors; or

f. Bodily injury to you or an insured within the meaning of part a. or b. of insured as defined.

3. **Coverage F — Medical Payments to Others**, does not apply to bodily injury.

a. To a residence employee if the bodily injury:

  (1) Occurs off the insured location; and

  (2) Does not arise out of or in the course of the residence employee's employment by an insured.

b. Bodily injury to any person eligible to receive benefits:

  (1) Voluntarily provided; or

  (2) Required to be provided;

  by the insured under any:

  (1) Workers' compensation law;

  (2) Non-occupational disability law; or

  (3) Occupational disease law;

c. From any:

  (1) Nuclear reaction;

  (2) Nuclear radiation; or

  (3) Radioactive contamination;

  all whether controlled or uncontrolled and however caused; or

  (4) any consequence of any of these.

d. To any person other than a residence employee of an insured, regularly residing on any part of the insured location.

## SECTION II — ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. Expenses we incur and costs taxed against an insured in any suit we defend;

b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

c. Reasonable expenses incurred by an insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.

3. **Damage to Property of Others.** We will pay at replacement cost, up to $500 per occurrence for property damage to property of others caused by an insured.

  We will not pay for property damage:

a. To the extent of any amount recoverable under Section I of this policy;

b. Caused intentionally by an insured who is 13 years of age or older;

c. To property owned by an insured;

d. To property owned by or rented to a tenant of an insured or a resident in your household; or

e. Arising out of:

  (1) A business engaged in by an insured.

  (2) Any act or omission in connection with a premises owned, rented or

**EXHIBIT 1**

24

controlled by an insured, other than the insured location; or
(3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.
This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an insured.

4. **Loss Assessment.** We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:
a. Bodily injury or property damage not excluded under Section II of this policy; or
b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.
This coverage applies only to loss assessments charged against you as owner or tenant of the residence premises.
We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.
Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:
a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or
b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.
The following do not apply to this coverage.
(1) Section II — Coverage E — Personal Liability Exclusion 2.a.(1);
(2) Condition 1. Policy Period, under SECTIONS I AND II — CONDITIONS.

## SECTION II — CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one occurrence will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of insureds, claims made or persons injured. All bodily injury and property damage resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one occurrence.
Our total liability under Coverage F for all medical expense payable for bodily injury to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.
2. **Severability of Insurance.** This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence.
3. **Duties After Loss.** In case of an accident or occurrence, the insured will perform the following duties that apply: You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:
(1) The identity of the policy and insured;
(2) Reasonably available information on the time, place and circumstances of the accident or occurrence; and
(3) Names and addresses of any claimants and witnesses;
b. Promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence;
c. At our request, help us:
(1) To make settlement;
(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an insured;
(3) With the conduct of suits and attend hearings and trials;
(4) To secure and give evidence and obtain the attendance of witnesses;
d. Under the coverage — Damage to Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the insured's control;
e. The insured will not, except at the insured's own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the bodily injury.

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.**
The injured person or someone acting for the injured person will:
a. Give us written proof of claim, under oath if required, as soon as is practical; and
b. Authorize us to obtain copies of medical reports and records.
The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim — Coverage F — Medical Payments to Others.** Payment under this coverage is not an admission of liability by an insured or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.
No one will have the right to join us as a party to any action against an insured. Also, no action with respect to Coverage E can be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an insured will not relieve us of our obligations under this policy.

8. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND II — CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or bodily injury or property damage in Section II, which occurs during the policy period.
2. **Concealment or Fraud.** We do not provide coverage for an insured who has:
a. Intentionally concealed or misrepresented any material fact or circumstance;
b. Engaged in fraudulent conduct; or

Form H-5A (Ed. 10/93) NS        Page 24 of 29

Form H-5A (Ed. 10/93) NS        Page 25 of 29

**EXHIBIT** 1
25

3. **Liberalization Clause.** If we make a change which would broaden the coverage under this policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations. This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**
   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.
   Proof of mailing will be sufficient proof of notice.
   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.
   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
      (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or
      (b) If the risk has changed substantially since the policy was issued. This can be done by letting you know at least 30 days before the date cancellation takes effect.
   (4) When this policy is written for a period more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.
   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.
   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

Form H-6A (Ed. 10/93) NS          Page 26 of 29

---

If an assignment is sought, an insured must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:
   a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;
   b. **Insured** includes:
      (1) Any member of your household who is an insured at the time of your death, but only while a resident of the residence premises; and
      (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

The Company providing this insurance is the member of The Hartford Insurance Group designated in the Declarations (a stock insurance company). The Company has caused this policy to be signed by its President and by a Secretary, but this policy shall not be binding unless countersigned on the Declarations by a duly authorized agent of the Company.

*C. M. O'Halloran*                          *Ramani Ayer*

Charles Minor O'Halloran,                   Ramani Ayer,
Secretary                                   President, Chairman & CEO

**THE FOLLOWING ENDORSEMENTS APPLY TO YOUR POLICY ONLY WHEN THEIR FORM NUMBER IS SHOWN ON YOUR DECLARATIONS PAGE IN THE AREA TITLED "FORMS AND ENDORSEMENTS NOW MADE PART OF THIS POLICY".**

**These Endorsements Change The Policy. Please Read Them Carefully.**

**Premises Alarm or Fire Protection System**
For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the residence premises. You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

Form HO-216   (Ed. 10/93)   Printed in U.S.A.   (ISO: HO-04-16-04-91)

Copyright, Insurance Services Office, Inc., 1990

Form H-6A (Ed. 10/93) NS          Page 27 of 29

---

**EXHIBIT** 1

26

**Mandatory Endorsement Specifically Excepted Perils**

As used herein, Peril means a cause of physical loss or damage to property. It has this meaning whether or not it is called a Peril or a Cause of Loss in this policy. Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

A.  ACTS, ERRORS OR OMISSIONS by you or others in:
1.  Planning, zoning, developing, surveying, testing or siting property;
2.  Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;
3.  The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:
    a.  Land or buildings or other structures;
    b.  Roads, water or gas mains, sewers, drainage ditches, levees, dams or other facilities; or
    c.  Other improvements or changes in or detains to land or other property;
4.  The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or
5.  The maintenance of any of such property or facilities.
This exception A. applies whether or not the property or facilities described above are:
1.  Covered under this policy; or
2.  On or away from the covered premises.
This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.
As used in this endorsement:
1.  If this policy is written to cover the risk of loss from specially named causes, Covered Peril means any Peril specifically named as covered; or
2.  If written to cover the risk of loss without specifying specifically named causes, Covered Peril means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B.  COLLAPSE, CRACKING or SHIFTING of buildings, other structures or facilities, or their parts, if the collapse, cracking or shifting:
1.  Occurs during earth movement, volcanic eruption or flood conditions or within 72 hours after they cease; and
2.  Would not have occurred but for earth movement, volcanic eruption or flood.
But if loss or damage by a Covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, cracking or shifting of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.
But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:
1.  Earthquake;
2.  Flood;
3.  Volcanic action;
4.  Volcanic eruption; or
5.  Sinkhole collapse,
this exception B. will not reduce that coverage.
As used in this exception B.:
1.  Cracking means cracking, separating, shrinking, bulging or expanding;
2.  Shifting means shifting, rising, settling, sinking, or lateral or other movement;
3.  Earth Movement means any earth movement, including but not limited to earthquake, landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other shifting of earth; all whether or not combined with flood or volcanic eruption. It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;
4.  Earthquake means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or shifting of rock beneath the surface of the ground from natural causes. An Earthquake includes all related shocks and after shocks;
5.  Volcanic eruption means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;
6.  Flood means:
    a.  Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;
    b.  Release of water held by a dam, levy or dike or by a water or flood control device;
    c.  Water that backs up from a sewer or drain; or
    d.  Water under the ground surface pressing on, or flowing, leaking or seeping through:
        (1)  Foundations, walls, floors or paved surfaces;
        (2)  Basements, whether paved or not; or
        (3)  Doors, windows or other openings.
All other provisions of this policy apply.

Form H-380-1   (Ed. 10/93)  Printed in U.S.A.   (NS)

**EXHIBIT** I
27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BERGER KAHN
A Law Corporation
P.O. Box 19694
Irvine, CA 92623-9694

## AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by Berger Kahn, A Law Corporation, whose business address is: 2 Park Plaza, Suite 650, Irvine, California 92614-8516 ("the firm").

On December 28, 2007, I served the within document(s) described as: **DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTION 1441(B); DEMAND FOR JURY TRIAL** on the interested parties in this action by placing true copy(ies) thereof enclosed in sealed envelope(s) addressed as follows:

| John P. Stennett, Esq. STENNETT & STENNETT 501 West Broadway, Suite 1340 San Diego, CA 92101 Telephone: (619) 544-6887 Facsimile: (619) 233-3796 | Attorneys for Plaintiffs FRELING BAKER and NATALIE JENSEN |

**BY MAIL** (Code Civ. Proc. §§ 1013a(3))–I deposited such envelope(s) for processing in the mail room in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 28, 2007, at Irvine, California.

_Marilyn Russell_
Marilyn Russell

PROOF OF SERVICE - DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

**JS 44**
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**

BAKER, FRELING
JENSEN, NATALIE

**DEFENDANTS**  FILED

HARTFORD CASUALTY INSURANCE COMPANY

2007 DEC 28  AM 10: 55

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

'07 CV 2426 WQH BLM

BY _____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

STENNETT & STENNETT
501 West Broadway, Suite 1340
San Diego, CA  92101

(619) 544-6887

ATTORNEYS (IF KNOWN)

BERGER KAHN, A Law Corporation
2 Park Plaza, Suite 650
Irvine, CA  92614

949-474-1880

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)   28 U.S.C. 1332, 1441 (Diversity/Removal)

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 382 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

**VI. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removal from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $ Excess of
$184,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instructions:)   JUDGE _____   Docket Number _____

DATE
December 27, 2007

SIGNATURE OF ATTORNEY OF RECORD
Teresa K. Pondew

PAID $350  12/28/07  BH  RECEIPT# 145958

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

## UNITED STATES
## DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

## # 145958     — BH

## December 28, 2007
## 10:56:25

## Civ Fil Non-Pris
USAO #.: O7CV2426 CIVIL FILING
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: BC# 44084

## Total-> $350.00

FROM: CIVIL FILING
      FRELING V. HARTFORD INSURANCE